ALFRED C. BEROLZHEIMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWIN M. BEROLZHEIMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 89259, 89267.   Promulgated October 6, 1939.

*Mark Eisner, Esq.,* for the petitioners.
*W. Frank Gibbs, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies in income tax of the petitioners for 1934 by including in their income the income of trusts which they had created. The only issue for decision in each case is whether the income of the trusts is taxable to the grantors. The facts are found as stipulated by the parties.

Alfred C. Berolzheimer created a trust on May 2, 1932, for the benefit of his son born on April 25, 1925. The trust was irrevocable but was to terminate on January 2, 1941, or upon the death of the grantor or the beneficiary, whichever should occur first. The grantor named himself trustee. The trustee was to apply to the use of the son "at such times, in such amounts and in such manner as said Trustee may in his uncontrolled discretion decide, so much of the net income from this trust fund as in the sole and absolute discretion of the Trustee may be necessary and proper for the maintenance, education and well-being of said Kenneth Berolzheimer and shall accumulate the balance of such net income for said Kenneth Berolzheimer, if any." The trustee could also use principal, if necessary, for the needs of the beneficiary. The accumulated income was to go to the beneficiary upon termination of the trust and the corpus was to go to the grantor or his estate. Stock dividends,

rights, capital disbursements, and proceeds of sales or dispositions of assets were to be a part of the corpus.

The trustee was given power to manage, invest, reinvest, retain, sell, exchange, vote, and otherwise deal with the assets of the trust as he thought best. He was not limited to the investments by fiduciaries fixed by the laws of New York and he was not to be liable for loss resulting from the investment or retention of the trust funds.

The donor transferred property to the trust in 1932 and all of the income of the trust for the year 1934 was paid to or accumulated for the beneficiary. The gross income for 1932 consisted of interest in the amount of $4,224.98 and dividends in the amount of $10,270. The net income was $13,919.17, of which $9,600 was distributed for the use of the beneficiary and reported by him, and the remainder was retained as accumulations by the trust and reported by it.

The Commissioner, in determining the deficiency, included the $13,919.17 of trust income in the income of the grantor, with the explanation that his action was in accordance with section 166 of the Revenue Act of 1934.

The respondent, in his brief, makes no argument that section 166 has any application here. The section applies to revocable trusts and clearly does not apply to this trust. The first argument of the respondent is that no trust was created and the instrument was a mere device to reduce taxes. Not only has he failed to cite authorities to support this argument, but the facts in the record also fail to support it. The provisions of the trust instrument upon which he relies to show that in reality there was no trust are those giving control over the corpus to the trustee, those permitting the trustee to take securities in his individual name, those including capital gains in corpus, and those relieving the trustee from liability. Such provisions are not unusual in trusts. This trust was not an empty one like those in *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands*, 34 B. T. A. 1107; and *Warren H. Corning*, 36 B. T. A. 301. Not only was a valid trust created under the laws of New York, but the trust must be recognized for income tax purposes, since it changed materially the interest of the grantor in the income of the corpus. Cf. *Jay C. Hormel*, 39 B. T. A. 244; *Clifford* v. *Helvering*, 105 Fed. (2d) 586.

The only other argument made by the respondent is that the trust was for the support, maintenance, and education of a minor son and, since the income was to discharge an obligation of the grantor, it is taxable to him under the principle of *Douglas* v. *Willcuts*, 296 U. S. 1; *Helvering* v. *Schweitzer*, 296 U. S. 551; *Helvering* v. *Blumenthal*, 296 U. S. 552; *Commissioner* v. *Grosvenor*, 85 Fed. (2d) 2; and *Hill* v. *Commissioner*, 88 Fed. (2d) 941. This case comes within the

authority of those cases. The grantor was the trustee. So much of the income of the trust as he deemed necessary was required to be used for the "maintenance, education and well being" of his minor son. It thus was designed to discharge an obligation which the petitioner owed to the recipient and was not given for the use and benefit of the recipient without any restriction as to its use. Cf. *Henry A. B. Dunning*, 36 B. T. A. 1222; *Ralph L. Gray*, 38 B. T. A. 584; *Jay C. Hormel, supra.* Nine thousand six hundred dollars was distributed in this year for the "maintenance, education, and well being" of the minor son and we are unwilling to hold that any less amount is taxable to the father, although he testified that $2,500 would have been sufficient to properly support, educate, and maintain the son during the year. *Commissioner* v. *Grosvenor, supra.* The remainder, which did not have to be so used and was not so used, is not taxable to the petitioner. *Martin F. Tiernan, Trustee*, 37 B. T. A. 1048; *E. E. Black*, 36 B. T. A. 346.

Edwin created three trusts on February 23, 1931, one for the benefit of his wife, one for the benefit of his son, and one for the benefit of his daughter. The trusts were similar, for present purposes, to the trusts created by Alfred, except that the income of the one for his wife was not restricted as to use. The son was over twenty-one years of age in 1934 and the father owed him no duty of support, education, and maintenance. The income of those two trusts was not taxable to Edwin. *Henry A. B. Dunning, supra; Ralph L. Gray, supra; Jay C. Hormel, supra; Shanley* v. *Bowers*, 81 Fed. (2d) 13; *Clifford* v. *Helvering, supra.* The daughter became twenty-one years of age on September 4, 1934. Not more than $3,425.47 of the income of her trust was used to discharge the obligation of her father to support her, and that amount is taxable to him, since he failed to prove a lesser amount.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

---

OPPER, concurring: I am still of the opinion that *Jay C. Hormel*, 39 B. T. A. 244, was erroneously decided, and I can not distinguish this case from that one. I therefore concur in the result reached but not in the prevailing opinion.

I recognize, of course, that the majority believe the cases to be distinguishable. Yet that distinction seems to me less than substantial. In the *Hormel* case it was conceded that the permitted use included maintenance and education, so that in fact we had a trust which created a discretionary expenditure for education, maintenance, "use and benefit." Here the income is to be expended "as

said Trustee [this petitioner] may in his uncontrolled discretion decide * * *" for the "maintenance, education and well-being" of the beneficiary. Of course no claim is or could be made that the wife in the *Hormel* case was any more adverse in her interest than is this petitioner. Thus, the majority appear to have decided that "benefit" is not synonymous with "well-being."[1] For that is the only difference that I can see on the essential facts.

---

DISNEY, dissenting: I agree with the majority opinion that section 166 of the Revenue Act of 1934 is inapplicable, the trusts specifically stating that same are irrevocable, and agree further that there was no liability upon the trustor, Edwin Berolzheimer, for the support of his son after majority and, therefore, the income of the trust is not taxable to him. Moreover, I think the principle of *Douglas* v. *Willcuts*, 296 U. S. 1, was properly applied as to $9,600 of the income of the trust set up by Alfred Berolzheimer. But I am unable to agree in the other conclusions of the majority. The broad powers given to the trustor-trustee, his freedom from legal restriction as to investments and from all liability, except for willful wrongdoing, destroyed reality of the trust, in my opinion. I can not reconcile the conclusion here with those in *Benjamin F. Wollman*, 31 B. T. A. 37, and *William C. Rands*, 34 B. T. A. 1107, as to breadth of powers remaining in the trustor, for the essential elements of the trusts therein and herein differ in no real sense. As to freedom from legal restrictions and liability, petitioners seek to nullify the exculpatory clauses by reference to state decisions involving litigation between parties to trusts and indicating unenforceability of such clauses. The question as to whether trusts might be unenforceable between parties in the state tribunal is not controlling here upon a question of reality of trust where grantor is trustee. *Lyeth* v. *Hoey*, 305 U. S. 188, summarizes the rule as follows:

In dealing with the meaning and application of an act of Congress enacted in the exercise of its plenary power under the Constitution to tax income and to grant exemptions from that tax, it is the will of Congress which controls, and the expression of its will, in the absence of language evidencing a different purpose, should be interpreted "so as to give a uniform application to a nationwide scheme of taxation." *Burnet* v. *Harmel*, 287 U. S. 103, 110. Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. * * *

---

[1] But see Webster's New International Dictionary, 2d Ed.: "BENEFIT * * * whatever promotes welfare; * * *.," "WELFARE * * * state or condition in regard to well-being; * * *."

In *Morgan* v. *Commissioner*, 103 Fed. (2d) 636, it was held that the definition of a power of appointment within the meaning of section 302 (f) of the Revenue Act of 1936, as amended, is a matter of Federal law and not of state law. We, therefore, in interpreting the Federal statute as to a trust, should not be bound by state decisions. In *Equitable Life Assurance Society* v. *Bowers*, 87 Fed. (2d) 687, it is said:

> * * * But generally speaking our revenue statutes make their own definitions, and are not to be assumed to accommodate themselves to local variants. * * *

I think that Congress addressed itself, in the revenue law, to real trusts and not shams, and that we should not follow or approve something which has the mere habiliments, but not the body, of a trust, the mere name of trust without the elements of responsibility and good faith regard for a beneficiary for which equity has regard.

In *Stoddard* v. *Eaton*, 22 Fed. (2d) 184, we read:

> The contention of the plaintiff is that the so-called "trust agreements" worked no severance of the trusteed securities from the corpus of the plaintiff's property, and that these securities, whether in the hands of the trustees or not, were always his own assets, and therefore that the losses sustained on their sale were proper items of deduction from his gross income. *He says that the verbal form of the transaction does not necessarily control the construction to be placed upon it; that the environing conditions—the motivation, the reactions of the parties to the situation thus integrated and to its developing phases—all have a significance which the law must evaluate before the genuine relation of the transactions to the Income Tax Act may be ascertained.* With this suggestion, stated in these general terms, I am disposed to agree. For we are not here concerned with the rights of contracting parties who may evoke a rule of estoppel to prevent the change of a comma in the written bond, nor are there innocent third parties involved who have relied upon a title or upon an authority expressed in writing.
>
> \*    \*    \*    \*    \*    \*    \*
>
> After all, the word "trust" as used in section 219 of the Revenue Act of 1918 (Comp. St. § 6336–1/8ii), can hardly have been intended to comprehend every instance in which a trust is recognized in equity. A trust ex maleficio, a resulting trust, or a constructive trust are examples of trusts which do not fit into the frame of the statute. A trust, as therein understood, is not only an express trust, but a genuine trust transaction. *A revenue statute does not address itself to fictions.* [Italics supplied.]

Petitioners, when they take refuge behind the idea that the courts do not recognize the exculpatory clauses involved in the trusts herein, tacitly admit that the instruments herein violate the essential law of trusts. We should not be so wedded to the mere term "trust" as applied to an instrument as to disregard the essential requirements of trusteeship.

It seems to me also that section 167 (a) (1) of the Revenue Act of 1934 clearly applies here. The trust instrument provides that "all proceeds of the sale, redemption or other distribution of assets

included in the principal of the trust shall be received, held and considered by him [the trustee] as part of and in addition to the corpus", and the corpus at the end of the trust period under the instrument goes to the trustor. It is true that the provision as to proceeds of sale or disposition of assets being considered corpus is subject to the expression, "all, however, to the extent permitted by law", etc., but we know of no law prohibiting a trust from providing that the net income to be distributed shall not include profits from sale of corpus, so that the above provision of section 10 of the instrument is not eliminated by the reference to "the extent permitted by law", etc. Of course the fact that such trust provisions are permitted by law does not mean that the income from such trusts can not by the revenue law be attributed to and taxed to the trustor. Both sections 166 and 167 apply to trusts which may be entirely effective for purposes other than income taxation. Petitioner points out section 17 (a) of the Personal Property Law of New York, but that section affects only stock dividends, stating that, unless otherwise provided in a trust instrument, they shall be corpus. We are here concerned with sale or disposition of trust assets. We held in *William C. Rands, supra*, that the trustor therein in legal effect accomplished only an assignment of future income, for he provided not a full and complete transfer of the corpus to the trustee, so that the beneficiary should receive all of the benefits of such corpus, but a specific limit upon such benefits by deleting therefrom what might well have been the more important part, to wit, profits from sale or disposition of corpus, retaining these for himself when same, as corpus, were delivered to him upon the termination of the trust. We held therein that in this he retained such a highly important attribute of ownership as indicated that the trust lacked substance and reality. Since the trust instrument retains by a specific provision, as corpus, the proceeds of sale or disposition of trust assets, and provides that such corpus is to be paid to trustor at termination of trust, it is plain that the instrument does in fact provide, in the words of the statute, that:

\* \* \* income of a trust—

(1) is \* \* \* held or accumulated for future distribution to the grantor. \* \* \*

In *Henry A. B. Dunning*, 36 B. T. A. 1222, we relied in part upon the fact that corpus was not retained for distribution to grantor, in holding the trust effective for income tax purposes. Petitioner contends, however, that under the law of New York proceeds of sale or disposition of trust assets were corpus, and that we are, therefore, bound so to hold. As above discussed as to meaning of trust, the fact that state law denominates such funds as corpus is not conclusive when, as here, we are interested in whether such funds are

"income of a trust" within the purview of section 167. If, although called corpus by the state law, the proceeds of sale or disposition of trust assets are income of the trust, then it is plain that they are under the ban of section 167 (a) (1), as being held or accumulated for future distribution to petitioner. Such proceeds do constitute income of the trust—*Arthur Letts, Jr.*, 30 B. T. A. 800; affd., 84 Fed. (2d) 760; *Old Colony Trust Co. et al., Executors*, 38 B. T. A. 828. In *Preston R. Bassett*, 33 B. T. A. 182, 185, we said that "capital gain, although under local law not 'income' of the trust, would clearly be income under the Federal statutes." Moreover, in *Commissioner* v. *Morris*, 90 Fed. (2d) 962, wherein section 167 of the Revenue Act of 1928 was considered in connection with the question as to whether capital gains from sale of trust assets were corpus or trust income, the court points out that, although section 167 of the Revenue Act of 1928 did not apply to income from such capital gains absolutely distributable as principal at termination of trust, the same would not be true under section 167 of the Revenue Act of 1932—which is the same as in the 1934 Act.

In my opinion, trust income was accumulated for the grantor, and he, for that additional reason, is taxable upon the income involved herein. I dissent.