**SUHR v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 8785, 8786.

Circuit Court of Appeals, Sixth Circuit.

March 5, 1942.

W. H. Annat, of Cleveland, Ohio (William H. Annat, Robert E. Sipes, and Spieth, Taggart, Spring & Annat, all of Cleveland, Ohio, on the brief), for petitioner.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The petitions assail decisions of the Board of Tax Appeals sustaining determinations of the respondent, that the income of an irrevocable trust created for the benefit of the petitioner's wife and stepsons, is taxable to the grantor. While other grounds in support of the assessment were urged, the Board's decision, two members dissenting, was based solely upon the doctrine of Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A. L.R. 391, the Board holding that because the trust instrument gave to the trustee a conditional right to invade the corpus of the trust for the support and maintenance of the beneficiaries, the trust income was taxable to the grantor. The facts were stipulated.

The taxpayer married on June 8, 1935, and since then has maintained a residence for his family in Lakewood, Ohio. He had no living children of his own, but in 1938 adopted his wife's two minor sons by a former marriage. In December, 1935, he created a trust, with the Cleveland Trust Company as trustee, for the benefit of his wife and her sons, transferring to the trustee certain shares of the City Ice and Fuel Company. The trust agreement provided that the entire net income of the trust should be paid to the wife as long as she should live, but that if the petitioner survived her, the trust should terminate and principal and undistributed income be returned to him. If the wife survived him the entire net income, after her death, was to be paid to the sons (or, if deceased, to their lawful issue), until the older reached the age of 30 years, if living, or would have attained that age, at which time the trust was to terminate and the principal and undistributed income to go to the sons or their lawful issue.

The instrument also provided that the trustee might, in its sole discretion, pay to the wife during her lifetime, in addition to the income from the trust estate, "such part of the principal of the trust estate as second party (the trustee) shall deem necessary to properly care for and support her, taking into consideration such other means of support and sources of income as she shall then have." A similar provision was made for the benefit of the sons, or other beneficiaries, after the death of the wife. A clause in the instrument also provided that no income or principal payable to any beneficiary should be alienated, disposed of, or in any manner encumbered while in the possession of the trustee, otherwise than by its authority, and that if any beneficiary attempted to so dispose of income or principal, or if by reason of a beneficiary's bankruptcy or insolvency, or because of attachment or garnishment, his interest might vest in or be enjoyed by some person otherwise than as provided in the trust agreement, then the trust was to terminate as to such beneficiary and the income or principal thereafter during his life was to be held by the trustee in its absolute discretion, but with power to provide for maintenance, support and education of such beneficiary, his spouse, or child.

The trust agreement was in force during 1935 and 1936, the taxable years herein question. The trustee received dividends in each year, all of which, after deducting its fees, it credited to the wife who filed her individual income tax return for the year 1936, and paid the tax shown thereon to be due. No income tax return was made by her for 1935 because she had no taxable income in that year.

The petitioner, in 1935, filed with the Collector a gift tax return in which he listed the securities constituting the corpus of the trust, and paid the required gift tax. At all times since his marriage in 1935, the petitioner maintained a home for his wife and family; paid for its maintenance and upkeep, and for the support and maintenance of his wife and her two children. None of the income of the trust was used for that purpose. The Commissioner increased the taxpayer's gross income for 1935 and 1936 by the amounts of the net trust income for those years, after deducting the fees paid to the trustee, and in this was sustained by the Board of Tax Appeals.

The Commissioner supports the Board's decisions upon four grounds. He says (1) that the income was paid by the grantor to his wife in satisfaction of his legal obligation to support her, and so is taxable to him under § 22(a) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev. Code, § 22(a), in response to the holding in Douglas v. Willcuts, supra; (2) that the trust income is also taxable to the grantor under § 167 of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Code, § 167; (3) that § 166 is likewise applicable, 26 U.S.C.A. Int.Rev.Code, § 166; and (4) that the trust income is taxable to the grantor under § 22(a) because he remained substantially the owner of the trust properties under the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. While the decision of the Board is based only upon the first of these grounds, we examine them all because they are here urged, Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, and the facts being complete for determination there is no necessity for remand to the Board.

The decision in Douglas v. Willcuts is not applicable to sustain the present tax. There is nothing in the trust instrument to support an inference that the trust was in discharge of the grantor's legal obligation to support his wife. There was no agreement by her that the benefits of the trust were to relieve him of such obligation, nor was any of the income of the trust used for maintenance or support. The fact that the grantor, in the exercise of caution, envisioning perhaps the possibility of a change in his fortunes, lodged in his trustee a discretion to invade the corpus of the trust for this purpose, is not enough to warrant a holding that the trust was executed in discharge of the grantor's common law, statutory, or moral obligation to support his wife. Moreover, the terms of the trust instrument negative the implication urged upon us, for the discretion lodged with the trustee is circumscribed by a direction that consideration be given to other means of support and sources of income "as she shall then have." There is no similarity between the present trust and the alimony trusts adjudicated in Douglas v. Willcuts, and other cases, wherein the payments provided are expressly or by clear implication, with the assent of the parties or by command of the court, established for support, maintenance or in release of dower. The present taxpayer continued to perform his statutory and moral duty apart from the trust distributions. Shanley v. Bowers, 2 Cir., 81 F.2d 13; Com'r v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839; Whiteley v. Com'r, 3 Cir., 120 F.2d 782.

Section 167 of the Revenue Acts of 1934 and 1936 provides that where any part of the income of a trust (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest may be held or accumulated for future distribution to the grantor; or (2) may in the discretion of the grantor or of any person not having a substantial adverse interest, be distributed to the grantor; then such part of the income of the trust shall be included in computing the net income of the grantor. From this it is argued that under the present agreement, if the grantor should not pay the family expenses, then the wife would be required to use the trust income for her support and maintenance. This overlooks the fact that the income becomes the sole property of the wife. There is no obligation upon her to support the family if her husband can, and he is not relieved of his legal obligation to do so. It is, of course, true that if he failed, the wife might use her own funds for that purpose, but that would be by her own volition and not through any obligation imposed upon her by the trust. It is further suggested that the trustee might invade the principal, if necessary, for the wife's maintenance, or if she attempted to alienate or encumber her interest the trust would terminate with respect to her, in the event of which the trustee might apply the income or the principal, or both, to her support. Being possessed of that power, its exercise would

be equivalent to a distribution to the grantor, because in discharge of his obligation. It is perhaps, sufficient answer to say that the grantor had no such distribution in contemplation, save as decline in his own fortunes might make the exercise of the power appropriate. The direction to the trustee to take into consideration her other means of support, must refer to her own independent means, or the expected contributions of the grantor.

It must also be noted that a change in the grantor's fortunes which might materially lower his standard of living, would lower the standard of living of his family, with a corresponding reduction of the measure of his obligation to support and maintain. If, in such circumstances the desire of the wife to maintain a higher standard would persuade the trustee to exercise the power to invade the corpus of the trust, this would not be in discharge of the grantor's legal or moral obligation. Moreover, the spendthrift clauses of the trust instrument do not come into play except through some act or fault of the beneficiaries who, unlike the trustee, have an adverse interest. In other words, it is not the purpose of the trust instrument to discharge obligations of the grantor for maintenance and support, but to discourage improvidence. They may be invoked only by forfeiture of a greater interest, by beneficiaries, having a stake in preserving for themselves and their issue both the income and principal of the gift. They are designed to thwart and not to invite use of trust income in discharge of the grantor's obligations. The trust income is not taxable to the grantor under § 167.

▉ Section 166 provides that where, at any time, the power to revest in the grantor title to any part of the corpus of the trust is vested in the grantor or any person not having a substantial adverse interest, then the income of such part of the trust shall be included in computing the net income of the grantor. It is conceded that in the light of the decision in Helvering v. Wood, 309 U.S. 344, 60 S. Ct. 551, 84 L.Ed. 796, no contention can now be made that income is taxable to the grantor under § 166, merely because he has reserved the right to receive the principal upon the death of his wife if he should then be living, for, as pointed out

in that case, while a power to revest or revoke may in economic fact be the equivalent of reversion, yet the Congress seems to have drawn § 166 with the distinction between them in mind since mere reversions are not mentioned. Congress confined the section to trusts where there was a power to revest and did not extend it to trusts which might revert to the grantor, and there is no ambiguity lurking in the statute. The present grantor reserved no power to recall the corpus, though it may revert to him upon the death of his wife during his lifetime.

▉ The Commissioner contends, however, that even though § 166 does not apply, by reason of a power in the grantor to recall the corpus, nevertheless, under the provision in the trust instrument empowering the trustee to use principal for support, and under the provision for the termination of the trust upon attempts of beneficiaries to alienate or encumber interests therein, not only the income but the principal might be disbursed in satisfaction of the legal obligations of the grantor, and such disbursements would be equivalent for tax purposes to a distribution directly to the trustor under the doctrine of Douglas v. Willcuts, supra. This contention is perhaps sufficiently answered by our discussion of the tax obligation asserted under § 167. In addition, however, it must be recalled that during the tax years here in question, there has been no such application either of the income or the principal of the trust. As indicated in Com'r of Int. Rev. v. Grosvenor, 2 Cir., 85 F.2d 2, a settlor is taxable upon the income of a trust created to discharge his legal obligations, and so used. Douglas v. Willcuts, supra; Helvering v. Stokes, 296 U.S. 551, 56 S.Ct. 308, 80 L.Ed. 389; Helvering v. Coxey, 297 U.S. 694, 56 S.Ct. 498, 80 L.Ed. 986, and Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390. Where income is not used to discharge the grantor's obligation, such income is not taxable to him. Stuart v. Commissioner, 7 Cir., 124 F.2d 772. In the Grosvenor case it was assumed that the income there in question was so used, in the absence of evidence to the contrary. Here, it is stipulated, and the fact so found by the Board, that the income was not so used during the taxable years. The Board, in a long line of cases,[1] followed the opin-

---

[1] Geo. H. Deuble, 42 B.T.A. 277; E. E. Black, 36 B.T.A. 346; Martin F. Tiernan, Trustee, 37 B.T.A. 1048; Al-

fred C. Berolzheimer, 40 B.T.A. 645; Percy M. Chandler, 41 B.T.A. 165.

ion of its General Counsel, G.C.M. 18972; XVI-33-88, 82. "In cases where the trust income or at least part of it might, in the discretion of the trustees, have been used to support the minor children of the grantor there should be taxed to the grantor only so much of the trust income as is actually distributed. * * * The fact that the trust income may be distributed for the support of such persons (but actually is not) does not make such income subject to distribution to the grantor within the meaning of § 167 of the Revenue Acts here involved." And if not subject to distribution to wife or children in discharge of the grantor's obligation within the meaning of § 167, then by the same token, it is not distributed to the grantor under § 166, if not so disbursed. It may also be observed in determining whether, under either section, the doctrine of Douglas v. Willcuts, supra, is applicable, that the grantor in 1935 when the trust instrument was executed, and through 1935 and 1936, the taxable years, was under no legal obligation to provide for his wife's sons—they were not legally adopted by him until 1938.

We come, then, to the final question in the case, and this has given us difficulty. Section 22(a), with its broad sweep covering "gains or profits and income derived from any source whatever," indicates, says Helvering v. Clifford, supra, that it was the purpose of the Congress to use the full measure of its taxing powers, and so construction of the statute should be consonant with that purpose. This led the court to inquire whether the grantor, after the trust had been established, might still be treated under the statutory scheme, as the owner of the corpus. Our trouble arises from the fact that precise standards or guides not only are absent from the statute or appropriate regulations, but that the court, in its effort to supply the omission, has found itself likewise unable to give us definitive charts of the road to judgment. Rejecting "technical constructions, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes," we are told that the answer to the question whether a grantor has so far reserved dominion and control over the corpus of a trust so that, as a matter of law, he still remains the owner, must depend upon analysis of the terms of the trust in each instance, and of all the circumstances attendant upon its creation and operation, and that special scrutiny must be given to the arrangement when the trustee and the beneficiary are members of the same family group and form but one economic unit.

Clifford's trust was one of short duration, its term but five years, with the wife as beneficiary. While there were exceptions, Clifford retained the same control for all practical purposes, as an individual would have had, and there was merely a temporary reallocation of the income within an intimate family group. Clifford named himself as a trustee, and retained the right to accumulate income; retained complete control over the principal fund, its conversion, investment, reinvestment, and reversion of the corpus to him at the end of the term. The trust instrument here involved, does not, in many important respects, conform to the Clifford trust. It is not a short term trust; it endures for the life of the settlor and perhaps much longer,—its term is indeterminate. The settlor is not the trustee, the trust powers being vested in a trust company. The corpus does not, at all events, revest in the grantor though it may upon a condition, perhaps remote, revert, if the grantor survives his wife. The family group has not the solidarity of the Clifford family. The impulse to provide for stepsons before their adoption is perhaps a little less compelling than to provide for one's own. Yet, present are some of the criteria of ownership relied upon in the Clifford case, and the immediate and primary beneficiary of the trust is the wife, one at least of the normal consequences of family solidarity. The grantor retained such control over sales and investments of trust property, as resided in provisos, that no sale, investment, or reinvestment of the trust estate should be made without his written consent or approval, if living, and of his wife after his death, and that the trustee should execute to him such proxies, powers of attorney, and agreements as he might direct.

The point is made, however, in the Clifford case, that no one fact is normally decisive, but that all considerations and circumstances of the kind there mentioned, are relative to the question of ownership and are appropriate foundations for findings on that issue. With complete submissiveness to the authority of the Clif-

ford case, we have endeavored to analyze the present trust instrument, and the circumstances of its execution. No lack of respect for the authority of the Clifford case dictates our recital of the difficulties encountered. If an essential factor leading to a conclusion of the grantor's ownership of the trust corpus is the shortness of the term, then that factor is here absent. But the court of the Second Circuit, equally zealous in the application of the rules of the Clifford case, holds, in Com'r v. Buck, 120 F.2d 775, that while the control factor is sufficiently present when the trust is of short duration nevertheless, control may be present in a trust of long duration and the grantor be regarded as the owner. In the Clifford case the donor was himself the trustee, but the court in the Buck case concludes that Helvering v. Richter, 312 U.S. 561, 61 S.Ct. 723, 85 L. Ed. 1043, removes that circumstance as a significant element in determining ownership; that while in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A. L.R. 655, title to the corpus was retained by the donor, there was no such retention in Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

Perhaps it is inevitable that the fine distinctions pointed to must challenge the draftsman of a trust, the profession which supports or denies its taxability, and the forum in which it is adjudicated, whenever courts face the necessity of or assume responsibility for supplying, by construction, standards omitted by the lawmakers. A trust, like a combination under the patent law, becomes a new entity distinguished from "prior art," whenever an important element is added to or removed from the reserved "bundle of rights" which in a previous adjudication has brought a finding of ownership. So viewing the problem, we think this case does not fall within the rationalization of Helvering v. Clifford, and that it is to be aligned with such cases as Com'r v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839, and Com'r v. Betts, 7 Cir., 123 F.2d 534, rather than with Com'r v. Buck, supra, or Whiteley v. Com'r, supra. It is clearly distinguishable from our recent case of Com'r v. Goulder, 6 Cir., 123 F.2d 686, decided December 2, 1941, which is plainly controlled by the Clifford case, if not also by Douglas v. Willcuts, supra.

The decisions of the Board of Tax Appeals are reversed.