**WHAYNE v. GLENN, Collector of Internal Revenue.**

No. 551.

District Court, W. D. Kentucky, Louisville Division.

March 6, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Mills Kitchin, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

The plaintiff, R. C. Whayne, brought this action to recover from the defendant, as Collector of Internal Revenue for Kentucky, the sum of $25,174.98 with interest which he alleges he was illegally required to pay as income tax for the years 1938, 1939 and 1940 and as a gift tax for the years 1938 and 1940. The taxes in question depend upon the nature and effect of three gifts (two of which were gifts in trust) which the plaintiff made in 1936, 1938 and 1940 to his wife and three children. The income tax question is whether the income subsequently accruing from the corpus of the gifts is taxable to the plaintiff as grantor or to the respective donees. The gift tax question is whether these gifts were such completed gifts as to be subject to the gift tax, and, if so, whether certain of them are taxable as present gifts or as gifts of future interest.

There is no real controversy between the parties as to the material facts. The allegations of the complaint, which are at length, are for the most part not denied by the answer. The pleadings are supplemented by a stipulation of facts and the uncontradicted testimony of the witnesses who handled the transactions involved. The pleadings, stipulation and transcript of evidence accordingly state the facts in detail. For purposes of convenience, the following reduced and consolidated statement is made by the trial court. Reference is made to the findings for further details.

### Preliminary Statement.

For many years prior to 1936 the plaintiff Roy C. Whayne and his brother, Harry T. Whayne, were partners doing business under the name of Roy C. Whayne Supply Company which engaged in the business of selling, renting and servicing tractors, scrapers, graders, shovels, air compressers and other construction equipment. The interest of Roy C. Whayne in the partnership was 80% and the interest of Harry T. Whayne was 20%. The partnership carried on its business on the premises owned by it and located on the southwest corner of Eighth and Main Streets, Louisville, Kentucky.

Thos. J. Wood and Nelson Helm, both of Louisville, Ky., for plaintiff.

## Building Trust.

On December 1, 1936, Roy C. Whayne and Harry T. Whayne and their respective wives executed and delivered their deed by which they conveyed to Katherine Pfeiffer as Trustee the partnership real estate at Eighth and Main Streets to be held by the Trustee for the benefit of Bessie C. Whayne, wife of Roy C. Whayne, and Harry T. Whayne in the following proportions, namely, four-fifths to Bessie C. Whayne and one-fifth to Harry T. Whayne. Under the deed of trust the trustee was to hold and manage the property and keep it in repair and to pay the taxes and insurance premiums out of the income therefrom. The trustee was authorized to sell, lease, mortgage and give options on said real estate provided such acts were done with the consent of Roy C. Whayne and Harry T. Whayne, and to reinvest the proceeds in any manner agreeable to the beneficiaries holding a majority of interest in the trust estate. The trust was to continue for 21 years, at the end of which time the trustee was to convey to each beneficiary his or her beneficial interest. At any time during the existence of the trust the trustee should upon the demand of any beneficiary convey to such beneficiary his or her beneficial interest in the trust and upon the happening of such event the trust was to terminate with regard to such beneficiary. Any beneficiary had the power to sell, assign, or transfer all or any part of the beneficial interest. Before conveying the legal title to any beneficiary or accepting the transfer of any beneficial interest the trustee was to give to Roy C. Whayne and the beneficiaries not less than 10 days notice of such proposed conveyance or transfer. Roy C. Whayne and Harry T. Whayne had the right at any time to change the trustee. The trustee had no right to compensation for services rendered and was not to be personally liable for the doing or omission of any act in connection with the trust in the absence of fraud, gross negligence or willful wrongdoing. The deed of trust stated: "Roy C. Whayne agrees that his legal obligations in respect to Bessie C. Whayne shall not be diminished or in any way affected by reason of this conveyance."

Immediately thereafter Katherine Pfeiffer as trustee leased the property to Roy C. Whayne Supply Company for a period of five years from December 1, 1936, at a rental equal to one per cent (1%) of the annual gross receipts of the lessees business, with a minimum rental of $400 per month. The lease gave an option to the lessees to purchase the property at its fair and reasonable cash value as determined by the majority of three appraisers. In June 1940 the lease was modified by an oral agreement extending its term to an additional five years and fixing the rent for the remainder of the period at the sum of $550 per month plus taxes and maintenance.

The trustee, Katherine Pfeiffer, was an employee of Roy C. Whayne Supply Company, was experienced in keeping books and was financially responsible to the extent that she had a personal estate of not less than $20,000 in value. She prepared accounts covering the transactions of the trust from the date of its creation. The net income of the trust was unconditionally credited upon the books of the trust to the beneficiaries in accordance with their pro rata interests and held subject to the demands of the respective beneficiaries. On or about July 1, 1942, the beneficiaries requested termination of the trust and in compliance with this request the trust was terminated by the trustees executing, delivering and recording a deed transferring the property pro rata to the beneficiaries thereof. On July 29, 1942, the beneficiaries received the balance of distributable income previously credited to their accounts and not withdrawn by them.

## Equipment Trust.

On December 31, 1938, Roy C. Whayne executed his deed of trust to himself as trustee for Harry T. Whayne, his wife Bessie C. Whayne, and his children Elizabeth Whayne Helm, Roy C. Whayne, Jr., and Suzanne J. Whayne, by which he conveyed to himself as such trustee certain personal property valued therein at $22,796.50. The property included two Caterpillar Deisels and various notes executed to the Roy C. Whayne Supply Company by purchasers of various pieces of equipment previously sold by the Supply Company to such purchasers in the regular course of its business. On the same day the instrument was delivered to Bessie C. Whayne as beneficiary and as mother of the three children, and was received by her on their behalf and on her own behalf. A signed copy of the instrument was on the next day delivered to Nelson Helm, husband of one of the beneficiaries, and on January 18, 1939, Nelson Helm was appointed sole trus-

tee of the trust and the assets thereof were turned over to him as such successor trustee. By the deed of trust the grantor reserved no power to revoke any of the transfers therein made, nor to vest in himself any benefit therefrom, and agreed that his reserved powers with regard to the assets and administration of the trust should not be used to diminish the value of the trust estate or to benefit the grantor, directly or indirectly, at the expense of any beneficiary. The deed provided that the transfer was not to supersede or in any way affect any obligation the grantor may have to support or maintain any of the beneficiaries. The grantor reserved the right to appoint one or more suitable parties as successor trustees and to discharge such successor trustees as often as he deemed expedient. The beneficial interests in the trust were as follows:

1. One-fifth for the sole benefit of Harry T. Whayne with full right vested in him to terminate the trust of his share at any time by withdrawing all income and principal held for his account, and to assign the same in any manner in his sole discretion.

2. One-fifth for Bessie C. Whayne, the income therefrom to be accumulated and added to principal for a period of 15 years, provided she lived that long. During this period the grantor reserved the right to release from accumulation for immediate distribution to the beneficiary any part of the accumulated income, or of the principal, or both, in his sole discretion.

3. One-fifth for the benefit of Elizabeth Whayne Helm to be held upon the same terms as the share of Bessie C. Whayne, excepting that any part undisposed of at her death should pass to her issue.

4. One-fifth for the benefit of Roy C. Whayne, Jr., to be held upon similar terms as the share of Elizabeth Whayne Helm.

5. One-fifth for the benefit of Suzanne J. Whayne to be held upon similar terms as the share of Elizabeth Whayne Helm.

The trustee was granted the power to control, manage, sell and dispose of any trust estate in his hands for the purpose of reinvestment, and to reinvest the proceeds thereof, and with the approval of the grantor to engage in business and to mortgage, pledge, or borrow upon any asset of the trust estate. The grantor's approval of any transaction participated in by the trustee discharged the trustee of liability in respect thereto in the absence of fraud or wrongful misconduct. Nelson Helm continued to act as sole trustee until June 30, 1939, at which time Roy C. Whayne appointed himself as co-trustee thereof. The co-trustees continued to act until June 3, 1940, at which time Nelson Helm resigned and Buell E. Henry was appointed in his place. Henry continued to serve through the end of the year 1940.

The trust from its inception employed Roy C. Whayne Supply Company to act as its agent in renting out, servicing and selling equipment and in investing its idle funds by the purchase of equipment. The Company kept complete records of each piece of equipment handled by it.

## Transfer of Interest in Partnership.

On September 13, 1940, the plaintiff, Roy C. Whayne, made a gift to his wife Bessie C. Whayne of a 15% interest in the partnership business of Roy C. Whayne Supply Company. An oral agreement was made at the same time between the partners Roy C. Whayne, Harry T. Whayne and Bessie C. Whayne which was later reduced to writing and executed by the three parties on September 30, 1940, as of September 13, 1940. By this instrument the existing agreement of partnership between Roy C. Whayne and Harry T. Whayne, originally executed as of January 1, 1935, and subsequently amended, was further amended so as to make Bessie C. Whayne a new partner with a 15% interest consisting of the gift from her husband to her as above set out. Said instrument provided that Bessie C. Whayne should as between the partners be deemed a silent partner and not required to devote any of her time to the business of the firm, and should not be authorized to take any active part in the conduct of the business nor to represent the firm in dealings with other persons, nor to execute contracts or instruments in its behalf; that she should draw no salary, and for a period of 25 years from September 13, 1940, could withdraw no part of her investment in or profits from said firm except by the consent of Roy C. Whayne. Such restriction on withdrawal, however, was to be terminated by the prior death of Roy C. Whayne or by such disability as would prevent him from consenting. It further provided that in the event of death or withdrawal of a partner, or dissolution of the firm, Bessie C. Whayne and Roy C. Whayne should have a right superior to that of Harry T. Whayne to acquire the

interest of the other, and Roy C. Whayne should have a right superior to that of Bessie C. Whayne to acquire the interest of Harry T. Whayne. It further provided that Roy C. Whayne might at any time at his option repurchase for himself any part or all of the interest of Bessie C. Whayne at the fair value thereof. The previously existing rights and obligations of the two partners were to continue the same as before in all respects, except as changed by this amendment. The transfer of this interest in the partnership to Bessie C. Whayne was further evidenced by entries upon the books of the partnership transferring from the capital account of Roy C. Whayne 15% thereof and opening a capital account for Bessie C. Whayne and entering thereon the value of the interest transferred to her. These entries were made as of September 13, 1940, and the actual entries were made either on that date or within a day or two thereafter. At all times since September 13, 1940, the accounts, books and records of the firm have shown that Bessie C. Whayne was a partner therein, owning a 15% interest, and entitled to and credited with 15% of the net proceeds of the firm after deducting such expenses as were provided for in the agreement of partnership. The Company upon its partnership return, and each of the partners upon his or her individual return, for income tax purposes, for the year 1940 and for each subsequent year, have reported income accordingly.

### Facts Applicable to Building Trust, Equipment Trust, and Transfer of Interest in Partnership.

Roy C. Whayne was 52 years of age in December 1938 when the equipment trust was created. His wife was approximately 6 years younger. His oldest daughter was 23, his son was 19 and his youngest daughter 16. None of the children had any estate at that time of their own except small amounts which originated in their savings accounts. His main motive in all three gifts was to create an estate for his wife and each of his children which would protect them against the future. Avoidance of income tax was considered by him in making these gifts, as was the possible future saving in the estate tax, but the tax savings was not the prime motive. The resulting savings was recognized by the plaintiff as a favorable resultant.

With respect to both the building trust and the equipment trust, the original execution and their subsequent administration have been handled and supervised by Nelson Helm, attorney and son-in-law of the plaintiff. Roy C. Whayne did not use his influence in any way to dominate or manipulate these trusts for his benefit. During the years 1936, 1937, 1938, 1939 and 1940 the plaintiff continued to support his family from his own income as he had done previously before the creation of the trust, and the income from the trust was not used for the support or maintenance of either his wife or his children.

The Roy C. Whayne Supply Company was started by Roy C. Whayne and Harry T. Whayne as a small business on Main Street in 1913. The two brothers originally put all they had into the business. In its early years they operated with a limited capital, and with the business growing all the time they let as much as possible remain in the business. It has been very successful and has grown rapidly. It developed into a business that is operated by a number of men who have been in its employ for years. Although originally it was a local business in the vicinity of Louisville, it subsequently developed into a state-wide business and later into a national business all over the country. It has advertised consistently during past years that it carried the biggest stock in the South in its line of business. Roy C. Whayne would withdraw from his share of the earnings and profits of the partnership business so much as he needed to comfortably support and raise his family, and permitted the remainder of his portion to remain in the business, so that at the time when the trusts were created by him practically the only investment which he had, outside of his home, was his own money invested in his own business. In 1938 his estate was getting well beyond where he had any individual need for it.

The defendant contends that the income from the Building Trust created in 1936 and from the Equipment Trust created in 1938 was properly included in the income of Roy C. Whayne, the creator of the trust, under the ruling established by the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The decision in that case has resulted in a large amount of litigation between income tax payers and the Commissioner of

Internal Revenue in cases involving similar situations. Many decisions have followed and applied the rule announced in the Clifford case, and in some instances have extended the rule to include situations in which the facts were not nearly as strong in favor of the Commissioner as they were in the Clifford case. Many decisions, while recognizing the binding effect of the Clifford decision, have nevertheless held that the particular facts involved withdrew the case under consideration from the scope of that ruling. As was pointed out by the Court of Appeals for this Circuit in Suhr v. Commissioner of Internal Revenue, 126 F.2d 283, 287, the decision in each case must depend upon an analysis of the terms of the trust in each instance and of all the circumstances attendant upon its creation and operation. The application of the Clifford doctrine to a particular situation was considered by this Court in Belknap v. Glenn, Collector, D.C., 55 F.Supp. 631, in which case the Court referred to a number of the conflicting decisions. It was pointed out in the opinion of that case, as has been done in numerous other cases, that the three dominant considerations in each such case were (1) whether the trust was a long or short term trust, (2) the control of the creator over the trustee and the reserved power to manage the trust either by the terms of the trust instrument or such control over the trustee, and (3) the relationship of the beneficiaries to the settlor with particular reference to the family unit and the obligation of the settlor to support such beneficiary within that economic unit. It is unnecessary to review here the numerous decisions from other Circuits as the question has received a great deal of study and discussion in a number of cases from the Circuit Court of Appeals of this Circuit, wherein the leading cases from other Circuits have been referred to. The application of the doctrine to any particular set of facts has been either applied or refused in those cases enough times to show the different elements to which our Court of Appeals gives weight in analyzing any particular trust situation. The doctrine of the Clifford case was held applicable in the following cases: Commissioner of Internal Revenue, v. Goulder, 123 F.2d 686; Price v. Commissioner of Internal Revenue, 132 F.2d 95; Downie v. Commissioner of Internal Revenue, 133 F.2d 899; Warren v. Commissioner of Internal Revenue, 133 F.2d 312, affirming 45 B.T.A. 379. Miller v. Commissioner of Internal Revenue, 147 F.2d 189. On the other hand, it was held not to be applicable to the trusts discussed in the following cases: Suhr v. Commissioner of Internal Revenue, 6 Cir., 126 F.2d 283; Central National Bank v. Commissioner of Internal Revenue, 6 Cir., 141 F.2d 352, 153 A.L.R. 542. As has been pointed out in the opinions in those cases, the question is very often a close one, and the existence or non-existence of one or more particular facts may be decisive in the ruling. As was said in the Clifford opinion [309 U.S. 331, 60 S.Ct. 557]—

"Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant of the question of ownership and are appropriate foundations for findings on that issue."

That opinion further stated—

"Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus."

In every case the fundamental question is the same, namely, did the trust effect any substantial change in the dominion and control of the grantor of the trust estate? If such control over the corpus was in all essential respects the same after the trust was created as before, the case falls within the doctrine announced by the Clifford opinion.

Applying the foregoing test to the two trusts in question, and giving consideration to the cases in this Circuit in which the rule has been held applicable or inapplicable, the Court holds that both the Building Trust and the Equipment Trust come within the scope of the Clifford ruling as broadened by subsequent decisions. The duration of the trust, whether a short-term one or a long-term one, which in the earlier cases received important consideration, no longer appears to have nearly as much importance as previously. In Miller v. Commissioner, supra, it was stated by the Circuit Court of Appeals for this Circuit that the fact that the trust was a long-term trust did not of itself place it beyond the pale of the Clifford decision, and reference is made to the Court's previous decision in

Central National Bank v. Commissioner of Internal Revenue, supra, in support of that statement. See also Suhr v. Commissioner of Internal Revenue, 6 Cir., 126 F.2d 283 at 288. The emphasis seems to have been shifted to the question of control by the creator and to the relationship of the beneficiaries within the family unit. The overall situation in the present case corresponds fairly closely to the situations discussed in the cases of Warren v. Commissioner of Internal Revenue, supra, and Miller v. Commissioner of Internal Revenue, supra.

■ In the Building Trust the trustee for a majority of the time was an employee of the plaintiff, and for the remainder of the time the plaintiff himself was either a co-trustee or the sole trustee. The plaintiff and his brother had the right at any time to change the trustee, who served without compensation and was not to be personally liable in the absence of fraud, gross negligence, or willful wrong doing. The only asset in the trust estate was the real estate which the trustee was authorized to sell, lease, mortgage and give options upon, provided such acts were done with the consent of the plaintiff and his brother. As a matter of fact, the trustee immediately leased the real estate to the partnership with an option to buy. As was said in the Clifford opinion—

"It seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before."

The beneficiaries were the immediate members of the family unit with the result that the trust in reality was a·reallocation of income within an intimate family group.

■ In the Equipment Trust the property placed in trust was property belonging to the partnership and for all practical purposes was thereafter physically handled as if it was still partnership property. The trustee had the power to control, manage, sell and dispose of the trust estate, and the grantor's approval of his acts discharged the trustee of his liability in the absence of fraud or misconduct. The plaintiff made himself the original trustee, and after a short period of time appointed his son-in-law to succeed him, but within six months thereafter reappointed himself as co-trustee. When his son-in-law later resigned he was succeeded by an employee as co-trustee. The plaintiff had the right under the trust instrument to appoint and discharge successor trustees as often as he deemed expedient. In Hormel v. Helvering, 312 U.S. 552 at Page 559, 61 S.Ct. 719, 85 L.Ed. 1037, the Supreme Court pointed out that there was no substantial difference between the grantor acting as sole trustee and in his acting with a co-trustee who could be removed at any time. As in the Building Trust, the beneficiaries were members of the immediate family and the trust was substantially merely a reallocation of income within an intimate family group.

In the two cases above referred to from this Circuit, where the Court declined to apply the Clifford ruling, the facts presented a materially different situation from the one in the present case. In Suhr v. Commissioner of Internal Revenue the settlor was not the trustee, but on the contrary the trust powers were vested in a trust company. While some control over investments was retained by the grantor through the requirement that they should not be made without his written consent, yet the important power to direct and manage was lacking. In addition, the family group did not have the solidarity which existed in either the Clifford family or the Whayne family. Both of these differences were relied upon by the Court in that case, the opinion specifically stating [126 F.2d 287]—

"That special scrutiny must be given to the arrangement when the trustee and the beneficiary are members of the same family group and form but one economic unit."

In Central National Bank v. Commissioner of Internal Revenue the Court gave particular consideration to the fact that the wife of the grantor was dead, that such domination as he might have exercised over her disposition of trust funds was ended, that his children were not members of his household but adults with their own domestic establishments, and that the emancipation of a trustor's children, and his release from obligation to support them after they have arrived at full age, is a circumstance which could repel an inference of reserved ownership. The Court likewise relied upon the fact that the trustee in that case was a National Bank of Cleveland which was a disinterested trustee with the broad power usually conferred upon such a trustee, that the power to change the trustee was limited in that such a change could only be made in favor of another Cleveland Trust Company, and that the right to advise the trustee upon investments carried with it no

obligation on the part of the trustee to heed such advice. Even in that case, in the last of the four trusts there under consideration the Court held that the income therefrom was taxable to the donor because there was a reservation by the grantor of power to direct the investment and reinvestment of trust funds. The Court pointed out that even so slight a difference was enough to turn the scales.

■■ Plaintiff's counsel raises two additional questions that should be briefly referred to, namely, (1) the plaintiff agreed in the instruments creating the trusts that his legal obligations with respect to the support of the beneficiaries should not be in any way affected by reason of the creation of the trust, and (2) the taxpayer paid a gift tax in each instance, which was approved and accepted by the Commissioner, which action is inconsistent with the Commissioner's contention that the taxpayer reserved control over the property so transferred. Both contentions seem to be answered by the Clifford opinion. In that case it was stipulated that the trust was not designed to relieve the taxpayer from liability for family or household expenses and after execution of the trust the taxpayer paid large sums from his personal funds for such purposes. In that case the taxpayer likewise paid a Federal gift tax on the transfer of the property in trust. Nevertheless the income was held taxable to the creator of the trust. The desirability of legislation making income, estate and gift taxes so correlated as to be mutually exclusive has been often referred to, but such action on the part of Congress has apparently not been taken. At the present time income, estate and gift taxes are not so correlated as to be mutually exclusive. Commissioner of Internal Revenue v. Beck's Estate, 2 Cir., 129 F.2d 243. See also Smith v. Shaughnessy, 318 U.S. 176, 179, 63 S.Ct. 545, 87 L.Ed. 690; Commissioner of Internal Revenue v. Goulder, 6 Cir., 123 F.2d 686, 687.

■■ The defendant also contends that the income from the 15% interest in the partnership which the plaintiff transferred to his wife in 1940 should be included in the income of the plaintiff, irrespective of the purported gift to his wife. The question involved has been previously considered by this Court in the case of Hardymon v. Glenn, W.D.Ky., 56 F.Supp. 269. In the opinion in that case the authorities are referred to and the legal principles involved are discussed. Accordingly, it is unnecessary to restate them here. The ruling in the present case appears controlled by the following two decisions from the Circuit Court of Appeals from this Circuit, namely, Commissioner of Internal Revenue v. Olds, 60 F.2d 252; Rose v. Commissioner of Internal Revenue, 65 F.2d 616. Supporting authorities also from the same Circuit are Marshall v. Commissioner of Internal Revenue, 57 F.2d 633; Bardach v. Commissioner of Internal Revenue, 90 F.2d 323; Commissioner of Internal Revenue v. Yeiser, 75 F.2d 956. See also Gregory v. Helvering, 293 U.S. 465, 469, 55 S. Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830; Kell v. Commissioner of Internal Revenue, 5 Cir., 88 F.2d 453; Humphreys v. Commissioner of Internal Revenue, 2 Cir., 88 F.2d 430; Copland v. Commissioner of Internal Revenue, 7 Cir., 41 F.2d 501; Champlin v. Commissioner of Internal Revenue, 10 Cir., 71 F. 2d 23. The gift in the present case was not as unrestricted as were the gifts in the Hardymon case, but such restrictions as were imposed were partnership restrictions and were reasonable from a partnership viewpoint if the property represented by the gift was to continue its character as partnership assets. Such restrictions did not prevent the transfer from being a completed gift. Roy C. Whayne completely divested himself of that much capital; it was no longer a part of his estate, and he retained no right by which the gift could be undone or the value of it be regained as a part of his estate. The partnership restrictions which went with the gift were not such as would prevent the donee from becoming a bona fide partner in the partnership business. It is not necessary to constitute one a partner in a business that he contribute both capital and services. One can become a partner by contribution of capital without devoting his personal services to the enterprise. Jewell v. Janes 238 Ky. 63, 36 S.W.2d 875; Kell v. Commissioner of Internal Revenue, 5 Cir., 88 F.2d 453. See also Humphreys v. Commissioner of Internal Revenue, 2 Cir., 88 F.2d 430. In the Olds case, supra, the Court of Appeals for this Circuit held that a partnership agreement between a father and his daughter was not invalid either because the agreement stipulated that the business should be conducted by the father in his name or because it did not permit the daughters to withdraw their share of the

525

profits without restraint. The Court stated in that opinion [60 F.2d 254]—

"It is within the power of the parties entering into a partnership agreement to restrict the rights of the several partners to the extent of making one of them the sole agent of the others for conducting the business. * * * They may also agree that profits shall not be distributed but put back in the business, or shall be distributed only upon the happening of a specified event or as authorized by the partner in charge of the business."

The Court holds that the income from the 15% interest in the partnership transferred to Bessie C. Whayne was properly included in the income tax return of Bessie C. Whayne and was improperly included by the Commissioner as part of the income of Roy C. Whayne.

After establishing the Equipment Trust on December 31, 1938, Roy C. Whayne reported the gift in a gift tax return in which he claimed an exclusion of $5,000 with respect to each of the four beneficiaries. The exclusions were properly claimed, unless the interest transferred was a future interest in property, since under the ruling in Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909 the beneficiaries of a trust, rather than the trust as such, were considered the persons to whom the gift was made. However, the Commissioner held that the interest transferred was a future interest rather than a present interest. Section 504(b) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev. Acts, page 585, allowed an exclusion of $5,000 with respect to the donor's gifts to any person "other than of future interests in property." The exclusion was accordingly denied by the Commissioner. The difference between a future interest and a present interest for gift tax purposes is explained by the Supreme Court in United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913 and in Ryerson v. United States 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917. It was there stated [312 U.S. 399, 61 S.Ct. 661]—

"The term 'future interests in property' refers to any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date."

It has been held in several cases that where the trust beneficiary is not given an absolute right to the immediate enjoyment of the income but application of the income for his benefit is subject to the discretion of the trustee, the interest so conveyed is a future interest within the meaning of the gift tax statute. Welch v. Paine, 1 Cir., 130 F.2d 990; French v. Commissioner of Internal Revenue, 8 Cir., 138 F. 2d 254. See Commissioner of Internal Revenue v. Wells, 6 Cir. 132 F.2d 405. In the Equipment Trust under consideration the beneficiaries were not given the absolute right to the present enjoyment of the income nor to the present possession or enjoyment of the corpus. Their rights were limited to commence at some future time, conditional upon the exercise of the trustee of his discretionary powers. In the Court's opinion the ruling of the Commissioner on this point was correct.

Counsel for plaintiff will prepare and tender for entry judgment in accordance with the foregoing findings.