## COMMISSIONER OF INTERNAL REVENUE v. GOULDER.

### No. 8625.

Circuit Court of Appeals, Sixth Circuit.

Dec. 2, 1941.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Helen R. Carloss, and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Isador Grossman, of Cleveland, Ohio (McAfee, Grossman, Hanning & Newcomer, Isador Grossman, and Ralph A. Colbert, all of Cleveland, Ohio, on the brief), for respondent.

Before SIMONS, HAMILTON and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Respondent, Herbert 'G. Goulder, was, the owner of 5,000 shares of the common capital stock of the Federal Knitting Mills. Company. On October 1, 1934, he executed a trust instrument transferring the entire

5,000 shares to himself as trustee for the benefit of his wife, Edna G. Goulder, and caused the corporation to so transfer the shares on its books. The preamble to the declaration of trust provided the settlor was desirous of making provision for the maintenance, support and welfare of his wife, Edna G. Goulder. This clause was subsequently amended by the settlor and his wife so that no part of the trust income was to be used for her support or maintenance. The agreement provided the trustee was to hold the original corpus, together with additions thereto by the settlor or otherwise, in trust for enumerated uses and purposes. The trust was to terminate on the first occurrence of any one of four events: (1) September 30, 1939; (2) death of the settlor; (3) death of the beneficiary during the life of the settlor; (4) joint declaration in writing of the settlor and principal beneficiary directing termination. The income, including capital gains, accruing to the trust was distributable to the beneficiary at the trustee's discretion, or if retained until the termination of the trust, to be distributed (a) to the beneficiary, if living; (b) if dead, to the settlor and beneficiary's sons per stirpes; (c) if they or their lineal descendants were dead, as the beneficiary should, by her will appoint, or in default of appointment, to her heirs.

At the termination of the trust, the corpus was to be transferred to the settlor or his estate. The trustee was given power to sell, invest and reinvest and to exchange securities for other securities of the corpus and in general to exercise in respect to all the securities and properties of the corpus, all the rights and powers which are or may be exercised by individuals owning similar property in their own right. The trustee was not required to amortize any premium included in the purchase of securities, nor was he or the beneficiary responsible for any diminution of the principal of the trust estate by reason of its depreciation in value.

The trustee was required to render annual statements to the beneficiary showing all of the transactions of the trust during the preceding year and was empowered to charge or apportion expenses or losses to principal or income as he deemed just and equitable and the beneficiary and distributees were bound by his acts. The trustee was authorized, but not compelled, to borrow money for the improvement, protection and preservation of the trust estate and to pledge any part or all of the corpus of the trust as security therefor. Upon the termination of the trust, he was authorized in his sole discretion to distribute the corpus in kind or partly in kind and partly in cash. Provision was made in the trust instrument for the appointment of a successor trustee in the event the settlor should become incapacitated or cease to serve.

The trustee received during the calendar year 1934, dividends of $15,625 on stocks in the corpus of the trust, which were distributed to the beneficiary in 1935. The trust was terminated October 1, 1937, by a written joint declaration of the settlor and beneficiary. The corpus, less accumulated income and capital gains, was transferred to the settlor and the remainder to the beneficiary.

Respondent, as trustee of the trust, filed an income tax return for the calendar year 1934 with the Collector of Internal Revenue, pursuant to Sec. 161 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 161, and reported a tax of $656.25 for the trust as an entity, which tax was computed on the present $15,625. He also filed a gift tax return for the year 1934 with the Collector of Internal Revenue and included, as one of the gifts made by him in said year, the gift of the income made to his wife through the establishment of the present trust. He valued said gift at $35,614.56 and paid full gift tax on this sum.

Respondent duly filed his individual income tax return for the calendar year 1934 but did not include therein any part of the income accruing to the trust. The Commissioner, on audit and review of the return, included therein all the income of the trust pursuant to the provisions of Section 166 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 166, and found a deficiency in taxes against petitioner of $6,721.39. On petition to review the Commissioner's determination, the Board of Tax Appeals reversed and held that Section 166 of the Revenue Act was inapplicable and that the income of the trust was taxable under Section 161 of the 1934 Act.

■ Petitioner has abandoned taxability of the present income under Section 166 of the Act and now insists that it is taxable under Section 22(a) of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev. Code, § 22(a). Respondent urges on us that we lack the power to pass upon any questions other than those which were presented in the proceedings before the Board

688

of Tax Appeals. The power of this court to review the Board's decision is purely statutory.[1] We have jurisdiction. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037; Helvering v. Richter, 312 U.S. 561, 562, 61 S.Ct. 723, 85 L.Ed. 1043; Commissioner v. Central National Bank, 6 Cir., 119 F.2d 470.

Petitioner now relies upon the general definition of gross income in Sec. 22(a) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Code, § 22(a); Internal Revenue Code, § 22(a),[2] to support his determination of the deficiency and claims that the case of Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 557, 84 L.Ed. 788, is controlling.

The Clifford case involved the construction of a trust instrument similar to the present one except in that case the settlor had the right to hold the trust assets in his own or another individual's name and the beneficiary received none of the profits arising from capital gain. The settlor-trustee was empowered to compromise any claims owned by him as trustee and was not required to render statements to the beneficiary and there was no provision in the instrument for appointment of a successor-trustee, the income accruing to the beneficiary under the trust being free of any liability for the beneficiary's debts. The trust instrument contained a broad exculpatory clause protecting the trustee from all losses except those occasioned by his "own willful and deliberate" breaches of duty.

■ Respondent urges on us that the Clifford decision is not binding presently because the issues and the facts are substantially dissimilar and that only the incautious inquirer overlooking the differences in the facts would conclude that the Clifford case was controlling. It is true that a previous case construing a particular statute cannot be extended to cover more than was formerly decided, but it is also true that effect must be given to the implications contained in a former decision and

that the premises implicit in a holding are as authoritative as the holding itself.

■ The court in the Clifford case cast aside all technical considerations and the legal implications growing out of trust relations and brought within the ambit of Section 22(a) all income to a settlor of a trust where the trust was created to serve as a means for the transference of future income of the settlor to benefit his immediate relative, and where the corpus and income were but temporarily removed from his ownership.

In the light of the decision in the Clifford case and, as we view it, the immateriality of the differences in facts between the two cases, there can be no question that respondent retained such a substantial control over the property in question after its transfer to the trust that he must be considered the owner for the purpose of taxation. In the Clifford case the court said: "We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had."

The sole ground for the Commissioner's claim as set forth in the deficiency letter was that as the trust was declared by the respondent for the purpose of making pro-

[1] Upon such review, such courts shall have power to affirm, or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require. 26 U.S.C.A. Int.Rev.Code, §§ 1141 (c) (1), 1142; Sections 1141 and 1142 of the Internal Revenue Code.

[2] "(a) General definition. 'Gross income' includes, gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

vision for the maintenance, support and welfare of his wife, it was taxable under Section 166 of the Revenue Act of 1934.

Ordinarily the question of whether the facts in the case at bar being undisputed would bring the income arising to the trust within Section 22(a) to the settlor, is one of law, but the decision in the Clifford case seems to hold that whether or not such facts have the legal effect of proving ownership of income is one of fact. The powers of this court to review errors committed by the Board of Tax Appeals are appellate in nature. Having found that the Board of Tax Appeals has committed error, we are required to reverse its decision, but we lack the power to decide the facts upon appeal, no matter how clearly the record may disclose them. General Utilities & Operating Co., etc., v. Helvering, 296 U.S. 200, 207, 56 S.Ct. 185, 80 L.Ed. 154; Hormel v. Helvering, supra; Helvering v. Richter, supra.

Reversed and remanded to the Board of Tax Appeals for further proceedings not inconsistent herewith.