**CENTRAL NAT. BANK OF CLEVELAND v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 9536, 9537.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1944.

Walker H. Nye, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and Walker H. Nye, all of Cleveland, Ohio, on the brief), for petitioner.

Muriel S. Paul, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and Muriel S. Paul, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, HAMILTON, and MARTIN. Circuit Judges.

SIMONS, Circuit Judge.

Once more, as in Suhr v. Comm'r, 6 Cir., 126 F.2d 283, and other cases, are we presented with the problem of determining

whether, under given circumstances, the income of a family trust must be taxed to the settlor in the endeavor to apply the doctrine expounded in Helvering v. Clifford, 309 U. S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Much water has flowed under the bridge since the Clifford decision, and one has only to glance at the appendix to the Pavenstedt[1] study, "The Broadened Scope of Section 22(a)," 51 Yale Law Journal, 213, 251, wherein are classified the great number of cases applying and the greater number refusing to apply the Clifford rule, to apprehend that possibly confusion rather than clarification has followed the original exposition.

The petitioner's decedent, W. G. Wilson, between 1921 and 1928 created four trusts of which one was for the benefit of his two daughters, another for the benefit of his wife and three children, a third for the benefit of his daughter Margaret, and a fourth for the benefit of his son Robert. The trustee in the first three trusts, originally or by succession, was the Central National Bank of Cleveland, and the trustee in the fourth trust, the Bankers Trust Company of New York. Each trust originally provided that it could not be modified, altered, or revoked in any calendar year without notice to the trustee during the first 15 days of December of the preceding year, but in no event could it be modified so that the grantor would receive any part of the income. In 1934, however, a revision of § 166 of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, § 166, made income of such trusts taxable to the grantor, and so in June of that year the trusts were amended so as to be irrevocable. It was also provided, the grantor's wife being then deceased, that the income was to be divided equally among Wilson's children and that the trusts were to terminate on December 31, 1937, if the grantor were then still alive, and otherwise to continue for seven years after his death. The corpora of the trusts were to revert to the grantor if he lived until December 31, 1937, but, if not, they were to be divided equally among the children when the trusts terminated. The Wilson children were all married adults, having their own establishments and their own income, and all consented to the amendments. Prior to the execution of the trusts none had been receiving support from the father, since marriage.

The trustee in each trust was vested with the usual powers, and in the first three which will be called the Central Trusts, it was provided that the trustee would advise with the grantor as to sale, investment, or reinvestment of the trust estate, if the grantor were accessible, and, in the opinion of the trustee, in condition to advise. The fourth trust, which we call the Bankers Trust, reserved to the grantor the right to direct the trustee with regard to sales and investment of trust funds. In the Central Trusts there was also reserved to the grantor power to substitute another trustee, but with choice restricted to a Cleveland trust company, though if none were willing to serve, the power was lodged with the Probate Court of Cuyahoga County, or such other court as should have jurisdiction.

Wilson died November 30, 1935. He had reported the income from the four trusts for the period January 1, 1934, to June 15, 1934, the date of the amendments, as part of his 1934 taxable income. The respondent added to gross income the income of the trusts for the remainder of that year. Likewise the respondent added the income of the Central Trusts to his gross income for the period January 1, 1935 to November 30, 1935, as reported in the return for that year filed by his executor. A review of the 1934 deficiency was before this court in Comm'r v. Central Nat. Bank of Cleveland, 6 Cir., 119 F.2d 470. In that case the Board of Tax Appeals had reversed the determination of the Commissioner that the income of the trusts was taxable under § 166 of the Revenue Act of 1934. The Clifford case having been announced pending submission to this court, we reversed and remanded the case to the Board for consideration of the taxpayer's liability under § 22(a). Pursuant to the order of remand the case was reheard by the Board upon the original stipulation and additional evidence. The Board also considered a petition to review the Commissioner's determination of deficiency in the decedent's 1935 taxes. In each case the Commissioner was sustained on the ground that the trusts were short term trusts, the beneficiaries members of the grantor's family, with reversion of corpora to the grantor, and on the further ground, in respect to the Central Trusts, that the right to advise the trustee upon sales and investments was reservation of control within the Clifford decision because failure

[1] Chief, Securities Assoc. Unit, S.E.C.; former Special Assistant to Attorney General, Tax Division, Dept. of Justice.

to heed such advice might result in an exercise of the power of substitution, thereby depriving the trustee of the 2½ percent commission on gross income which it was entitled to receive for management.

■ We give consideration, first, to the Central Trusts. It has generally been considered, in applying the Clifford doctrine, that the controlling circumstances in cases of this kind are: (1) The length of term; (2) the family relationship; and (3) the measure of control reserved by the grantor, and as bearing upon the extent of control, consideration should be given to whether the grantor has designated himself as trustee, or others who may inferentially be said to be under his domination. But even if all three conditions are in some degree present, the Clifford doctrine, as we understand it, does not require that the trust income must necessarily be considered, for tax purposes, that of the donor. The most that is indicated is that when such circumstances coincide, "special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied * * * by devices which, though valid under state law, are not conclusive insofar as § 22(a) is concerned." [309 U.S. 331, 60 S.Ct. 556, 84 L.Ed. 788] It may be conceded, however, that a short term family trust, with substantial control thereof reserved, has not yet survived such scrutiny.

Short term trusts, whether within the family group or without it, are doubtless suspect, for control of the corpus will, within a short time, revert to the grantor. So if accompanied by substantial control of corpus and income, with beneficiaries within an intimate family group, it may well be said, as in the Clifford case, that "we have at best a temporary reallocation of income." We do not understand, however, that every short term trust necessarily, without more, comes within the Clifford doctrine, and this notwithstanding decision in Comm'r v. Buck, 2 Cir., 120 F.2d 775, 778, where it was said: "We conclude that, the control factor is sufficiently present when the trust is of short duration, as in the Clifford case (because the grantor will soon reacquire complete dominion), even if there are no express reservations of control."

It is of interest to follow the development of the rule in the Second Circuit in respect to length of the term. In the Buck case the period was indeterminate, being dependent upon whether the beneficiary predeceased the grantor, in which case there was a reversion. Notwithstanding the injunction in the Clifford case "that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings," the recited conclusion was reached in respect to the inevitability of a grantor's control residing in a short term trust. This was somewhat of a departure from the observation in Helvering v. Achelis, 2 Cir., 112 F.2d 929, 930, where in referring to the Clifford decision, it was said, "the court did not suggest that the settlor of a trust could not so completely sever himself from the income of property, for a period—even a short period—as to make it no longer his."

The Clifford trust was for 5 years. However, in a group of cases reported simultaneously in 122 F.2d, beginning with Comm'r v. Barbour, 2 Cir., at page 165, the court extended its concept of the short term trust to 6 and then to 6½ years, although in Comm'r v. Jonas, at page 169, it refused to extend it to encompass a trust for 10 years where the grantor had parted with both title and control and was not under obligation to support the beneficiary. Finally, in Helvering v. Elias, 171, at page 173, the conclusion was reached that "it is only when the term is longer than six or seven years (as for example ten years * * *) that the settlor's legal reservation of control becomes vital, * * * if the settlor and the trustee are not strangers." This was on the ground that legal powers of management add little to a reversioner's control while the trust lasts. In view of this apparent extension of the Clifford doctrine, the thought necessarily suggests itself that if this was its intended scope, how simple it would have been for the Supreme Court to have definitely announced that all short term family trusts left ownership of income for tax purposes in the trustor without consideration of reserved control,—and then what a world of finely spun argumentation we would have been saved.

Not all Circuits have held short term trusts, without more, to require determination of ownership for tax purposes in the grantor. Helvering v. Bok, 3 Cir., 132 F.2d 365, rejects the view that the income of every short term trust should be taxed to the settlor, as far beyond the Clifford case, and those which followed it. So do we. The Supreme Court extended the Clif-

ford doctrine to include a case where a co-trustee was to serve with the grantor, replaceable at the option of the grantor, and so under the grantor's control, Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. No case has been brought to our attention which expressly holds that a short term trust of itself requires taxation of income to the donor. The observation in Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, from which an implication to that effect is drawn, must be considered in the light of the differentiation that has been made between gifts of corpus and gifts of future income, since it was said in Helvering v. Stuart, 317 U.S. 154, 167, 63 S.Ct. 140, 147, "In the absence of a legislative rule, we have left to the process of repeated adjudications, the line between 'gifts of income-producing property and gifts of income from property of which the donor remains the owner, for all substantial and practical purposes.'" This line, we think, was not obliterated by the Clifford decision which based a conclusion of ownership upon definitive reservations of dominion, reservations which would perhaps have brought a longer trust within the ambit of § 22(a).

Each of the trusts here considered, though originally for a longer period, was, by amendment, terminable at the end of 3½ years if the grantor lived. In the event of death, however, prior to December 31, 1937, they were to continue for a period of 7 years thereafter, and it is at least worthy of observation that when the deficiencies were asserted the trusts were, in effect, 7 year trusts. While this circumstance is not conclusive of the character of the trusts, it bears upon the extent of the donor's dominion, to be inferred from an absolutely restricted brevity of term.

When we come to the Wilson family we find a situation that differs materially from that of the Clifford family. The wife of the trustor was dead. Such domination as he might have exercised over her disposition of trust funds, if any, was ended. His children were not members of his household but adults with their own domestic establishments. The trust income served no purpose in relieving the trustor of obligation to support, or as a substitute for customarily current bounties. If we also may indulge in speculation, and consider realities, in all likelihood, trust income raised the standard of living for the Wilson children, and to the extent they felt themselves

richer, to that extent the grantor was the poorer. The emancipation of a trustor's children, and his release from obligation to support them after they have arrived at full age, is a circumstance relied upon even in the Second Circuit to repel an inference of reserved ownership. Comm'r v. Jonas, supra.

When we come to the consideration of the settlor's reserved powers of control, we find more important differences between the Wilson trusts and that of Clifford. In the Clifford case the trustor exercised full voting powers incident to trusteed securities. He could exchange, mortgage, or pledge them either as part of the corpus or in respect to proceeds and income, and upon such terms and for such consideration as, in his absolute discretion, might seem fitting. He reserved power to invest, to loan on security or without, to purchase personal property without restriction because of its speculative character or rate of return or laws pertaining to investment of trust funds, to collect income, compromise claims, to hold property in the names of other persons, and extraordinary dividends were to be treated as principal to be added to corpus, and not as income. Nothing even remotely comparable to such control or dominion of trust property, is present in the Central Trusts. The trustee is a disinterested trustee, with the broad powers usually conferred upon a trustee. The sole right reserved by the grantor was the power to change the trustee, in which event he would be compelled to substitute a Cleveland trust company. The right to advise the trustee upon investments, with the trustee under no compulsion to heed, is clearly insubstantial since, in all likelihood, such advice might in the usual case be tendered without reservation.

The conclusion of the Tax Court that control of trust income and corpus remained for tax purposes in the settlor, was based entirely upon the assumption that a trustee with fees of 2½ percent on gross income collected, and subject to being superseded, would not refuse or fail to do what the grantor requested, because by so doing it might lose the commissions allowed it for the management of the trust. No evidence gives support to the inference, and we know of no general practice in trust management, of which the Board or the court may take judicial notice. On the other hand, it is just as fair an inference that an experienced trustee is as much concerned with

the liability of a trustee for breach of trust, as with collection of fees,—a liability of which he may not be relieved by contract. Moreover, the present trustee is not an individual with a single trust to administer, but a trust company or bank exercising trust functions and so charged with administration of many trusts. It is common experience that such institutions, by long experience and advice of investment counsel, develop investment practice and policy that will not yield even to the wishes of a valued client, if in conflict with them. The reservation of a right to advise is neither abnormal nor unnatural in the circumstances. The trusts were for the benefit of the grantor's children—his interest in the security of the corpora and their yield is but the normal manifestation of a parent's concern, reasonably to be expected, even without reservation or reversion, and in respect to an absolute gift as well as one through the medium of a trust. It does not imply dominion. We think that there is here no such reservation of control which, coupled with limitation of term and mere redistribution of income within an intimate family group brings the Central Trusts within the Clifford doctrine.

There is left for determination the taxability to the donor of the income of the Bankers Trust. The situation in respect to it differs in that there was a reservation by the grantor of power to direct the investment and reinvestment of trust funds. We hold that the income thereof is taxable to the donor or his estate. If the difference between the two classes of trusts seems not too vital, our response must be that in the application of a doctrine which takes into consideration not one circumstance but many, it is inevitable that there should result some hair-line decisions.

The order of the Board in respect to the deficiency resulting from the assertion of the tax upon the income of the Central Trusts, is reversed. Insofar as the Board's order sustains a determination of deficiency in respect to the income of the Bankers Trust, it is affirmed. The cause is remanded to the Tax Court of the United States for further proceedings not inconsistent herewith.

MARTIN, Circuit Judge (dissenting).

I do not concur in this reversal of the decision of the Board of Tax Appeals (now the Tax Court of the United States) with respect to the deficiency assessment against the trustor under Sec. 22(a) of the Revenue Act upon the income of the three "Central Trusts."

As pointed out by the tax tribunal, the trusts were short term trusts; the beneficiaries were the trustor's children and therefore members of his intimate family group; reversionary interests were reserved by the trustor; and the right to advise the trustee concerning sales and investments of the trust property was coupled with the right to substitute another trustee. These elements were deemed sufficient to bring the case within the sweep of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The Tax Court reasoned, moreover, that the trustee would be induced to adopt the advice of the grantor, inasmuch as, in doing so, it would be relieved of liability, except for neglect or wilful default; while, if it refused, the trustee could be supplanted by another, appointed by the grantor, and would be deprived thereby of commissions to the extent of at least 2½ percent of the gross income of the trust.

The Tax Court found, as a fact, and held that during the taxable period in question, the grantor of the trust had retained an interest in the corpus of each trust substantially equivalent to continuing ownership for tax purposes. I think the reasoning of the Tax Court sound, and its decision correct.

In my judgment, the opinion in the present case departs from the rationale of several of our previous decisions since the promulgation of the doctrine of Helvering v. Clifford, supra. Our opinions interpreting this doctrine are collated up to February 19, 1943, in the per curiam opinion in Downie v. Commissioner of Internal Revenue, 6 Cir., 133 F.2d 899. In Price v. Commissioner of Internal Revenue, 6 Cir., 132 F.2d 95, 97, we said: "Under the doctrine of Helvering v. Clifford, supra, the income from a short-term trust is taxable to the settlor, where he retains the right to reversion of the corpus and where the income from the property placed in trust is retained 'within an intimate family group,' * * * even though the settlor fails to retain the right to remove or replace the trustee, to direct investments, or to revoke the trust prior to its fixed short-term termination."

Earlier, the court had said in Commissioner of Internal Revenue v. Goulder, 6 Cir., 123 F.2d 686, 688: "The court in the

Clifford case cast aside all technical considerations and the legal implications growing out of trust relations and brought within the ambit of Section 22(a) all income to a settlor of a trust where the trust was created to serve as a means for the transference of future income of the settlor to benefit his immediate relatives, and where the corpus and income were but temporarily removed from his ownership." Other expressions of similar import may be found in our opinions.

While the grounds stated are those upon which I rest my dissent, I think that the decision of the Supreme Court, in Dobson v. Commissioner, 64 S.Ct. 239, 246, indicates quite clearly that a Tax Court decision of the present character should be affirmed; for it could hardly be gainsaid that its decision in the instant controversy "[has] warrant in the record" and "a reasonable basis in the law."