**SCHMIDT v. GLENN, Collector of Internal Revenue.**

**Civil Action No. 1027.**

District Court, W. D. Kentucky, at Louisville.

Jan. 20, 1948.

As Amended Feb. 21, 1948.

James E. Fahey and Skaggs, Hays & Fahey, all of Louisville, Ky., for plaintiff.

Sewell Key, Acting Asst. Atty. Gen., Andrew D. Sharpe and Homer R. Miller, Sp. Assts. to Atty. Gen., and David C. Walls, U. S. Atty., and A. Roy Copeland, Asst. U. S. Atty., both of Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

The question involved in this case is whether the income accruing in the years 1939, 1940, and 1941 upon two separate trust funds should be properly taxed to the Trustee of the trust funds or to plaintiff, the Donor.

The creation and terms of the trusts are evidenced by separate trust indentures dated December 1938, which are identical except as to names of the beneficiaries.

The income of the trusts, for all of the years involved, was paid to the Kentucky Trust Company (at the time the trusts were created, the Kentucky Title Trust Company).

The Trustee and beneficiaries declared and paid the tax and have filed claims for refunds, so that in the event the plaintiff in this action is unsuccessful, the trust income will not be twice assessed.

In December 1944, the Collector of Internal Revenue determined against the plaintiff taxes on the income of the trusts for three years, 1939, 1940, and 1941, which tax, with interest accrued to March 7, 1945, amounted in the aggregate to $105,937.54. Plaintiff paid this amount, filed suitable claims for refund of the taxes and interest.

There is little dispute as to the facts. A signed stipulation, filed at the time of the trial, presented without dispute all the essential facts. The plaintiff testified and introduced Mr. J. VanDyke Norman, Jr., Vice President and one of the investment officers of the trust company and S. Lyman Barber, Senior Trust Officer of the Trustee.

The evidence was largely directed to the history of the Coca Cola Company (Kentucky Corporation) and plaintiff's connection with it since early boyhood and to the circumstances attendant upon the creation and operation of the trusts.

Each trust consisted of 200 shares of stock in Coca Cola Bottling Company of Louisville, Inc., transferred to the Trustee simultaneously with the execution of the trust indenture (December 10, 1938) and an additional 50 shares of stock in that corporation transferred to the Trustee December 28, 1940.

Insofar as material to this action, these trust instruments provide that the Trustee shall accumulate the income received by the Trust, add it to principal and reinvest it until the beneficiaries reach twenty-five years of age. At that time, the Trustee is directed to distribute the income to the beneficiaries until they reach forty years of age, at which time the corpora of the trusts are to be distributed to the beneficiaries free of the trusts and the trusts are to end.

It is provided that should the beneficiaries die before reaching forty years of age, then the trusts' corpora are to be distributed on the death of the beneficiaries to the beneficiaries' living descendants. If there are no such descendants, then the distributions are to be made to the living descendants of the Donor of the trusts.

Paragraph IV of each trust instrument provides in part:

"During the lifetime of Donor, the Trustee is authorized, empowered and directed to lease, mortgage, pledge, sell, dispose of, invest and reinvest properties so held by it, and to vote stocks, exchange one class of securities for another, and agree to compromise with reference thereto *only at such times and in such manner* as may be authorized and directed by Donor in writing." (Italics supplied.)

After the Donor's death, the trust instrument gave the Trustee power to transfer or encumber the trust estate and to invest and reinvest its funds and vote its stock subject *to any change, reinvestment or compromise* being approved by at least two members of an Advisory Committee. This Committee was to consist of the grantor's wife, his brother, Paul Schmidt and his son, Martin F. Schmidt, or such other persons as the latter might designate in writing to the Trustee. After the grantor's death, vacancies on the Committee were to be filled by surviving Committee members.

The trust instruments further set forth restrictions on the Trustee with respect to investment of trust funds, providing that investment and reinvestment should be only in Government or municipal securities, listed stocks, bonds or other securities rated "Grade A" or better by two reputable rating agencies, or in life insurance contracts on the members of the grantor's family, it being further provided that not more than twenty-five percent of the trust estate should be invested in common stock or more than five percent in stocks or bonds of a single corporation.

It is provided, however, that stock in the Coca Cola Bottling Companies of Louisville, Shelbyville, and Elizabethtown could be held by the Trustee without regard to these limitations and restrictions and should the Trustee determine it was advisable to sell stock of these companies, such stock should be offered as follows:

1. To any Trustee under trusts created by the grantor for his wife or daughter or by any Trustee named under his last will and testament.

2. To the grantor's wife, if living, or if she be dead, to the Trustee under any trust instrument executed by her or named in her last will and testament.

3. To the grantor's daughter and son.

4. To Trustee under trust instruments executed by the grantor's brother, Paul Schmidt, during his lifetime or named under the terms of his last will and testament.

5. Upon such terms and conditions as the Trustee, with the approval of the Advisory Committee, shall determine.

The Trustee, with certain exceptions, was given power to credit, charge and apportion all receipts and disbursements, credits and discounts either to principal or income as the Trustee in its discretion should determine.

During his lifetime the grantor can remove the Trustee and appoint a new Trustee, but the new Trustee so appointed must be a trust company or bank with trust powers and a member of the Federal Reserve System having a capital stock of not less than $500,000. The grantor reserved the right from time to time to assign to the Trustee additional cash and other proper-

ties to be added to the corpus of the trust funds and to be administered in accordance with the terms and conditions of the trust instrument.

Paragraph IX provided:

"This agreement is intended to and shall be irrevocable and Donor hereby relinquishes any and every right in and to the trust estate and the income therefrom and any and every power in connection therewith except *the power to control investments,* change the Trustee and the personnel of the Advisory Committee, as hereinabove set forth." (Italics Supplied.)

### Findings of Fact.

I. On December 10, 1938, plaintiff, as grantor, executed and delivered to Kentucky Title Trust Company, Louisville, Kentucky, a corporation organized and existing under the laws of Kentucky (hereinafter sometimes referred to as the Trustee), two trust agreements wherein said Trust Company is named Trustee. One trust agreement established a trust for the use and benefit of plaintiff's daughter, Martha K. Schmidt, and the other established a trust for the use and benefit of plaintiff's son, Martin F. Schmidt.

II. On December 10, 1938, plaintiff transferred two hundred (200) shares of the common stock of Coca-Cola Bottling Company, of Louisville, Kentucky, Inc., a corporation organized and existing under the laws of Kentucky (hereinafter sometimes referred to as the Company), to the Trustee under the trust for his daughter, and two hundred (200) shares of such stock to the Trustee under the trust for his son. Such transfers were made pursuant to the terms of the trust instruments. Immediately upon receipt of these shares the Trustee caused all of said shares to be transferred on the books and records of the Company from the name of the plaintiff to its name as Trustee, and said shares during all times material to this action have been registered in the Trustee's name on said corporate books.

III. On December 28, 1940, plaintiff transferred fifty (50) shares of the common stock of the Company to the Trustee under the trust for his daughter and fifty (50) shares of such stock to the Trustee under the trust for his son. Such transfers were made pursuant to the terms of the trust instruments. Immediately upon receipt of these shares, the Trustee caused all of said shares to be transferred on the books and records of the Company from the name of the plaintiff to its name as Trustee, and said shares during all times material to this action have been registered in the Trustee's name on said corporate books.

IV. On June 16, 1944, the name of Kentucky Title Trust Company was changed to Kentucky Trust Company.

V. The plaintiff has never made any other additions to the corpus of either trust referred to in paragraph I above, and no reduction, withdrawal or substitution has ever been made from the corpus of either of such trusts.

VI. Plaintiff filed a gift tax return for the transfer of the stock referred to in paragraph II above in which he reported the value of said stock for gift tax purposes at $760 per share. He also filed a gift tax return for the transfer of the stock referred to in paragraph III above, which he also valued for gift tax purposes at $760 per share. Plaintiff paid gift taxes on the said returns on the foregoing basis. The Bureau of Internal Revenue, for gift tax purposes, revalued the stock referred to in paragraph II in the sum of $927.23 per share and the stock referred to in paragraph III in the sum of $937.76 per share and plaintiff paid additional gift taxes on the basis of said revaluations. No further adjustments have been made or proposed in said gift tax return by the Bureau of Internal Revenue.

VII. During the period December 10, 1938, through December 31, 1941, plaintiff filed his income tax returns with the defendant on the basis of cash receipts and disbursements and on a calendar year basis.

VIII. During the period December 10, 1938, through December 31, 1941, the Trustee filed with the defendant income tax returns which reported the income of the trusts referred to in paragraph III above and paid to the defendant the income taxes thereon. During the period September 23, 1941, to December 31, 1941, the income of the Trust for plaintiff's daughter, referred

to in paragraph I above was by the terms of the Trust distributable to her. She included such income in her income tax return filed for the taxable year ended December 31, 1941, and paid the defendant the income tax thereon. Said income, however, was not actually distributed to her by the Trustee.

IX. Protective claims for refunds of the Federal income taxes paid by the Trustee on the income received by the Trusts for the taxable years ended December 31, 1939, December 31, 1940, and December 31, 1941, have been filed solely to protect the rights of the Trustee and the beneficiaries of the Trusts herein referred to in the event that the income of these Trusts is ultimately held to be taxable to the plaintiff. A similar claim has been filed by plaintiff's daughter covering taxes paid by her on the income distributable (but not distributed) to her for the period September 23, 1941, to December 31, 1941.

X. Plaintiff's daughter, Martha K. Schmidt, was born September 23, 1916, and was married December 23, 1939. She has one child, born July 19, 1942. Plaintiff's son, Martin F. Schmidt, was born September 26, 1918, and was married February 21, 1942. He has one child, born March 31, 1945. Plaintiff was born February 11, 1890.

XI. On December 13, 1944, the Commissioner of Internal Revenue advised plaintiff that deficiencies in income taxes were to be assessed against him for the years 1939, 1940, and 1941, in the amounts of $22,972.71, $25,089.58 and $38,230.00 respectively, by reason of the inclusion of income derived under the trust agreements referred to in paragraph I above.

XII. Plaintiff paid the taxes referred to in Paragraph XI above to the defendant on January 20, 1945. On March 15, 1945, he paid the assessed interest on such taxes, to-wit, the sum of $6,680.97 for the year 1939, the sum of $5,791.22 for the year 1940 and the sum of $6,624.27 for the year 1941.

XIII. On March 9, 1945, the Commissioner of Internal Revenue assessed plaintiff for the amount of the additional taxes and interest referred to in paragraphs XI and XII above

XIV. On April 19, 1945, plaintiff duly filed claims for refund of the taxes and interest referred to in paragraphs XI and XII above. True and correct copies of such claims were attached to and made part of the stipulation filed in the record at the time of the trial. More than six months elapsed between the filing of such claims and the commencement of this action without any action having been taken on such claims by the Commissioner of Internal Revenue. Subsequent to the institution of this suit to-wit on January 23, 1946, the Commissioner of Internal Revenue notified plaintiff by registered mail that each of said claims for refund was rejected.

XV. The net income of plaintiff for the years 1939, 1940, and 1941, exclusive of the income from the trusts here involved is as follows:

| 1939 | $105,186.34 |
| 1940 | 96,595.12 |
| 1941 | 92,832.68 |

XVI. Since the creation of the trusts, none of the stock in the Coca Cola Bottling Company constituting the corpora of the trusts, has ever been voted and no request has ever been made by the plaintiff or any one else that the trustee vote the stock.

XVII. All questions of investment of the trust funds have been submitted to plaintiff by the Trustee for his approval, but at no time has plaintiff given any directions regarding the administration of the trusts.

## Conclusions of Law.

I. The authority relied upon by the Commissioner, requiring him to assess the income upon the trusts to plaintiff is Section 22(a) of the Revenue Act of 1934, U.S.C.A. Title 26 Int.Rev.Code, Section 22(a), which the Supreme Court has said, Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788, was intended by Congress in the broad sweep of its language to use the full measure of its taxing power "within those definable categories."

The *basic issue,* not to be obscured by technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes, is whether the grantor, after the establishment of

the trust, may still be regarded, for tax purposes, as the owner of the corpus.

The Court there noted the absence of precise standards or guides by statute or appropriate regulations and said:

"The answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation."

In the analysis to be made, it is not necessary that the donor of the trust *collect* the income, which is the source of the tax. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. Where the control of the trust is so complete that it must be said that the taxpayer is the owner of the trust income, then it is taxable to him. Emery v. Commissioner, 1 Cir., 156 F.2d 728; Bunting v. Commissioner, 6 Cir., 164 F.2d 443 (decided November 24, 1947).

It is the contention of the Commissioner here that plaintiff is properly taxable or the income from the trusts, conceding that no part of it has been paid to him and could not be paid in satisfaction of his legal obligations, because, by the terms of the trusts, he has retained such complete control both of the income and the corpora.

Counsel for the Commissioner concedes that the trusts involved should be classified as long-term trusts and concedes that the possibility of reverter is remote. His contention is that the powers reserved by the donor over the corpora of the trusts are sufficient to constitute ownership in him for tax purposes.

An analysis of the circumstances attendant upon the creation of the trusts reveals the plaintiff, the owner of sufficient property and income (both resulting from the operation of a business to which plaintiff had devoted his energies and ability from boyhood) desirous of settling upon his two children, one an adult daughter, the other a son approaching his majority, sufficient of his property to give them financial independence if prudently husbanded.

Tho he may have been actuated, at least in part, by a desire to seek a refuge from surtaxes, the presumption must also be indulged that he was actuated by that "love of off-spring—Nature's general law."

The Supreme Court had approved within four years next before the date of creation of the trusts, as undoubted, its various previous pronouncements that a taxpayer had the legal right to decrease or avoid altogether what would otherwise be his taxes, by means permitted by the law. Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.

The powers retained by donor are such as might reasonably be expected to enable him to sprinkle the management of the trusts with the experience of the one whose hands and ability produced them and lend to a trained and competent Trustee the paternal interest which he had in the successful operation of the trusts.

An analysis of "the operation" of the trusts in the more than nine years of their existence gives no indication that he has at any time sought to exercise any one of the retained powers for his selfish interests, even to the voting of the trusteed stock in the Coca Cola Bottling Company.

The powers reserved by plaintiff are very similar to those retained by the donor of the trust in the case of Suhr v. Commissioner, 6 Cir., 126 F.2d 283, 287. There Judge Simons, rejecting the contention that Suhr had retained ownership for the purpose of taxation said:

"The grantor retained such control over sales and investments of trust property, as resided in provisos, that no sale, investment, or reinvestment of the trust estate should be made without his written consent or approval, if living, and of his wife after his death, and that the trustee should execute to him such proxies, powers of attorney, and agreements as he might direct."

It may be doubted whether a fair construction of the powers retained in paragraph IV of the trust indentures, supra, would permit the Trustee to sell or dispose of any of the property comprising the corpora of the trusts, or reinvest in other property, at prices fixed arbitrarily by plaintiff without regard to value. It will be noticed that his right in this regard is to direct sales, exchanges, etc., "at such times

and in such manner," but that no mention is made of *terms of sale*.

The Court of Appeals of this Circuit in 1944 considered four trusts created by W. G. Wilson for the benefit of his wife and adult children. Central National Bank of Cleveland v. Commissioner, 141 F.2d 352, 153 A.L.R. 542. In each of the first three trusts, wherein the wife and daughters were beneficiaries, it was provided that the Trustee would advise with the grantor concerning the sale, investment and reinvestment of the trust estates, if the grantor were accessible, and, in the opinion of the Trustee, in condition to advise. In the fourth trust, where the son was beneficiary, the grantor reserved the right to direct the Trustee with regard to sales and investment of trust funds. The Court of Appeals held the first three trusts without the Clifford rule and the fourth one within the rule in that case.

Apparently conceding the distinction involved to be a hair-line decision, the Court unequivocally held the income taxable to the donor on trust estates in which the reservation of power gave to the donor the right "to direct the investment and reinvestment of the trust funds."

An examination of Clause IV of each of the trust indentures will show that in addition to the power with respect to lease, mortgage, pledge, sale and exchange, "during the lifetime of Donor, the Trustee is * * * directed to * * * invest and reinvest property so held by it * * * only at such times and in such manner as may be * * * directed by the Donor in writing."

The decision in the case at bar seems to me to be determined by this holding. See also Whayne v. Glenn, D.C., 59 F.Supp. 517, 524, an opinion of this Court by Judge Miller. That the test, continually refined by successive distinctions, each trifling in itself, poured out by the many decisions, should be reached by fiat rather than dialectically is suggested by at least one Court as the best approach to the issue. Kohnstamm v. Pedrick, 2 Cir., 153 F.2d 507.

■ Therefore, I conclude, that, in the light of the opinions here discussed, the plaintiff has not met the burden cast upon him in this case to show that the determination by the Collector; that the tax on the income of the two trusts was chargeable to the plaintiff was erroneous.

II. This Court has jurisdiction of the parties to, and the subject matter of, this action. Title 28 U.S.C.A. § 41(20).

III. The plaintiff's petition should be dismissed. Counsel for defendant will submit, upon notice to opposing Counsel, judgment as hereby authorized.

### Order

This cause having come on to be heard on motions of both the plaintiff and the defendant that the Court amend its Findings of Fact and Conclusions of Law, and said motions having been considered by the Court, said motions are both overruled.

Said Findings of Fact and Conclusions of Law are now amended in the following particulars:

### Findings of Fact

There are added to the Findings of Fact heretofore entered herein the following additional findings of fact:

1. The Court finds each and every fact as set out by the Stipulation of Facts filed by the parties herein.

2. During the taxable years here involved, and ever since 1925, plaintiff was president of the Coca-Cola Bottling Company of Louisville, Incorporated. Plaintiff and his wife and brothers held four out of the six directorships of the company. Plaintiff was also treasurer and manager of the company and in charge of its sales and productions. One of his brothers was secretary of the company.

3. Plaintiff is and at all times material to this action was, a citizen of the United States and a resident of Jefferson County, Kentucky, having his home near Buechel, Kentucky.

4. Defendant now is and continually since January 1, 1938, has been, Collector of Internal Revenue for the District of Kentucky.

5. Plaintiff has been associated with the Coca-Cola Bottling Company of Louisville, Incorporated, since 1902, and had taken over the presidency of that company in 1925.

6. Plaintiff's son, Martin F. Schmidt, had been associated with the Coca-Cola Bottling Company of Louisville, Incorporated, in various capacities since graduation from college in 1940, except during the period of his service with the United States Navy.

7. During the period involved in this action, stock of the Coca-Cola Bottling Company of Louisville, Incorporated was owned two thirds by the Schmidt family and one third by the Ewing, Hurlbut and Neiland families of Chattanooga, Tennessee.

8. The trustee is a corporation organized under the laws of Kentucky and has power under those laws to administer trusts. It is a substantial financial institution, managing investments totaling as much as $150,000,000. The plaintiff has never been a stockholder or a director of the trustee.

9. The initiative for the investment of trust funds came from the trustee's investment committee. The trustee reported each investment to the plaintiff and the plaintiff approved them.

10. A strict record was kept by the trustee of all investments and all receipts and disbursements of any income.

11. Except for the stock of the Coca-Cola Bottling Company of Louisville, Incorporated, the securities held by the trusts were all of corporations or governmental units wholly independent of the plaintiff and his family, and were securities which were widely held and currently bought and sold in the market.

### Conclusions of Law

1. Plaintiff as grantor of the two trusts here involved remained the owner of the trust properties for tax purposes, and the income therefrom was consequently taxable to him under section 22(a) of the Internal Revenue Code.

2. The plaintiff as grantor retained the power to direct the trustee in the voting of the stock.

Plaintiff objects to this order insofar as it does not find all of the facts which plaintiff requests the Court to find in his motion and prays an exception, which is allowed.